IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**NEWPORT NEWS HOLDINGS, LLC,**

        **Plaintiff,**

v.                                             Civil Action No. 4:17cv124

**GREAT AMERICAN INSURANCE COMPANY,**
d/b/a Great American Insurance Group,

        **Defendant.**

## **OPINION & ORDER**

This matter comes before the Court on Plaintiff Newport News Holdings, LLC's ("Newport News Holdings" or "Plaintiff's") Motion for Partial Summary Judgment ("Plaintiff's Motion"), Doc. 50, and Defendant, Great American Insurance Company's ("GAIC", or "Defendant") Motion for Summary Judgment ("Defendant's Motion"), Doc. 39 (collectively "Motions for Summary Judgment). For the reasons stated herein, the Court DENIES both Motions for Summary Judgment.

### I.    BACKGROUND & PROCEDURAL HISTORY

This case involves Plaintiff, the owner of a hotel in Newport News, suing Defendant, its insurance company, for denying coverage of damage that occurred as a result of vandalism to its hotel. See Doc. 1, Ex. 1 ("Compl.").

Plaintiff filed its complaint in the Circuit Court for the City of Newport News on September 26, 2017. See Compl. Defendant timely removed the case to this Court on October 31, 2017. Doc. 1. On November 27, 2017, the Parties joints moved to bifurcate the bad faith claims from the remainder of the insurance claims. Doc. 13. The Court GRANTED that bifurcation on November 28, 2017. Doc. 14.

1

On November 30, Plaintiff filed a Motion to Quash Defendant's subpoena duces tecum in regard to Plaintiff's expert witness. Doc. 15. On January 31, 2018, this Court entered an Order GRANTING Plaintiff's Motion to Quash. Doc. 22.

On March 9, 2018, Plaintiff filed a Motion to Compel Discovery Responses from Defendant. Doc. 24. On April 12, 2018, Defendant filed a Cross-Motion to Compel Discovery from Plaintiff. Doc. 30. On April 26, 2018, the Court heard oral argument on Plaintiff and Defendant's Motions to Compel. Doc. 36. On May 3, 2018, this Court entered an Order GRANTING Plaintiff's Motion to Compel IN PART and GRANTING Defendant's Motion to Compel IN PART. Doc. 38. Defendant and Plaintiff filed their respective Motions for Summary Judgement and Partial Summary Judgment on May 14, 2018. Docs. 39, 50. On May 14, 2018, this Court also entered an Order for Expedited Briefing on Plaintiff and Defendant's Motions for Summary Judgment and Partial Summary Judgment. Doc. 49. Plaintiff and Defendant filed responses in Opposition to their respective Motions for Summary Judgment and Partial Summary Judgment on May 24, 2018. Docs. 59, 60. Plaintiff and Defendant replied on May 29, 2018. Docs. 61, 62.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986); Terry's Floor Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the

motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings but must instead set forth specific facts illustrating genuine issues for trial. Celotex, 477 U.S. at 322–24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure to rebut the motion with such evidence will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

A mere scintilla of evidence is insufficient to withstand a motion for summary judgment. Rather, the evidence must be such that the factfinder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252. Although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex, 477 U.S. at 324).

**B. Applicable Law**

A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state, including that state's choice of law rule. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). "Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635–36 (4th Cir. 2005) (citing Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 419 (4th Cir. 2004); Buchanan v. Doe, 246 Va. 67, 431 S.E.2d 289, 291 (1993) ("generally, the law of the place

where an insurance contract is written and delivered controls issues as to its coverage.")). It is undisputed that the contract for insurance was delivered and executed in Virginia.

Under Virginia law, when the terms in a contract are clear and unambiguous, then the contract is construed according to its plain meaning. TravCo Ins. Co. v. Ward, 284 Va. 547, 552, 736 S.E.2d 321, 325 (2012). "Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." Id. (citing City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc., 271 Va. 574, 579, 628 S.E.2d 539, 542 (2006) (internal quotations omitted)).

The question of whether a writing is ambiguous is a question of law for the Court. Pennsylvania Nat. Mut. Cas. Ins. Co. v. Block Roofing Corp., 754 F. Supp. 2d 819, 823–24 (E.D. Va. 2010) (citing Riverton Investment Corp. v. United States, 170 F.Supp.2d 608, 613 (W.D.Va.2001) (citing Virginia law). "A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 557 S.E.2d 199, 200 (2002). The Court may not strain to find ambiguities in a policy provision. Pennsylvania Nat. Mut. Cas. Ins. Co., 754 F. Supp.2d at 823. A policy provision is ambiguous only when, in context, it is capable of more than one reasonable meaning. Id. Further, Virginia law construes ambiguities in insurance contracts against the insurer:

> Insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders. The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer.

Gov't Employees Ins. Co. v. Moore, 266 Va. 155, 165, 580 S.E.2d 823, 828 (2003).

## III. ANALYSIS

### A. Undisputed Facts

On November 13, 2015, Plaintiff purchased a property located at 6128 Jefferson Ave., Newport News, VA 23605 ("The Hotel"), and obtained a one-year commercial property policy from Defendant to insure the Hotel against all casualty risks ("The Policy"). Doc. 51 at 5, 6; See Doc. 40 at 6. Plaintiff paid the full premium for the insurance. Doc. 51 at 6. In the process of obtaining the insurance, Plaintiff, through insurance agents, told Defendant that the Hotel was not currently operational, but that Plaintiff expected to open the Hotel on January 1, 2016, after Plaintiff was able to make "any minor/cosmetic repairs necessary." Doc. 52-10 at 2; Doc. 41-4 at 3.

In early December, Plaintiff had the property inspected by the Health Department, and had a contractor visit the property to evaluate how long it would take to complete repair work on the property. Doc. 51 at 9-10. Between November 13, 2015 and January 26, 2016, police visited the Hotel on several occasions to investigate incidents of trespass and vandalism. Doc. 51 at 11-12. During part of this time, two of the Hotel's owners, Bharat Patel ("B. Patel"), and Sanjay Patel ("S. Patel") (collectively "the Hotel Owners"), were out of the country from mid-December until late January. Doc. 51 at 10. Therefore, they had an individual named Nick Sheth ("Sheth"), visit the property while they were gone.[1] Id. At the end of December, Sheth became aware that there were vandals on the property. Doc. 51 at 11. The police contacted Sheth on December 30, 2015 regarding a possible theft at the hotel. Id. On January 14, 2016, the police

---

[1] It is undisputed that Nick Sheth visited the Property during the time period that B. Patel and S. Patel were out of the country, however, as noted in the "Disputed Facts" section, the parties dispute what Sheth did when he visited the Property.

5

came to the building again, this time in regard to a broken pipe that had caused water to release in the kitchen. Id. at 12. At that time, Sheth cut off the water supply to the kitchen. Doc. 51 at 12. B. Patel and S. Patel returned from their trip on or about January 22 and January 25, 2016. Id.

On the morning of January 26, 2016, two persons were arrested leaving the hotel, and the following morning, Sheth discovered that the water supply line of the toilet in room 510 had been cut, causing water to leak down to the first floor (the "January 26 Loss"). Id; See also Doc. 40 at 2. Plaintiff contacted GAIC on January 27, 2016, and Defendant hired an adjuster to inspect the property. The adjuster inspected the property on January 29, 2016 and February 3, 2016. Doc. 40 at 2. On February 11, 2016, the adjuster provided Plaintiff with a timeline of events based on their conversations regarding the January 26 Loss. Id. at 7. Defendant also hired various individuals to provide an estimate for the scope of damage related to the cut toilet supply line and the any repairs related to the cut toilet supply line. Doc. 40 at 7. Their report determined that the losses were valued at $657,187.88. Doc. 51 at 15. On March 7, 2017, Plaintiff submitted its Sworn Proof of Loss, in which it stated that the full cost to repair or replace the Building damage caused by the January 26, 2016 vandalism is $1,582,832.12 and the cost to repair or replace the Business Personal Property is $405,832.66. Doc. 40, Ex. 14. Their Sworn Proof of Loss was based on an estimate they obtained from Atlantic Estimating, LLC and Rollins Inventory. Doc. 40 at 9; Doc. 59 at 13. On May 25, 2017, Defendant denied Plaintiff's insurance policy citing the following provisions:

> G. Vacancy
> 1. Description of Terms
>    a. As used in the Vacancy Condition, the term building and the term vacant have the following meaning set forth in (1) and (2) below....

> (2) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>
> > (a) rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
> > (b) used by the building owner to conduct customary operations.
>
> b. Buildings under construction or renovation are not considered vacant.
>
> 2. Vacancy Provisions
>
> > If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
> >
> > a. We will not pay for loss or damage caused by any of the following even if they are Covered Causes of Loss:
> >
> > (1) vandalism;
> > (2) sprinkler leakage, unless you have protected the system against freezing;
> > (3) building glass breakage;
> > (4) water damage;
> > (5) theft; or,
> > (6) attempted theft.

Doc. 40 at 27-28.

> A. Concealment, Misrepresentation or Fraud
>
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. this Coverage Part;
> 2. the Covered Property;
> 3. your interest in the Covered Property; or
> 4. a claim under this Coverage Part.

Doc. 40 at 12.

**B. Disputed Facts**

There are several facts that the parties dispute, including but not limited to:

7

1. Whether Plaintiff's, through Nimesh "Nick" Sheth, performed caulking and cleaning work at the Hotel during the months prior to the loss;

2. Whether caulking and cleaning amounts to performing "renovations" under the Policy;

3. Whether the Hotel Owners disclosed to Defendant's adjuster the fact that Plaintiff had been doing caulking and cleaning work at the Hotel prior to the loss;

4. Whether Plaintiff's Sworn Proof of Loss attempted to claim damage to the Hotel that exceeded the January 26 Loss;

5. Whether Plaintiff disclosed to GAIC that it was claiming loss that occurred prior to January 26, 2016;

6. Whether Plaintiff intended to conceal the timing or scope of the vandalism that occurred prior to January 26, 2016 in its initial interview with Defendant's insurance adjustor.

## C. Waiver or Applicability of the Vacancy Provision

*i. Summary of Parties' Arguments*

Plaintiff argues that it is entitled to partial summary judgment on the issue of liability because Defendant is estopped from relying on its vacancy provision, while Defendant argues that it is entitled to summary judgment because: 1) it is not estopped from relying on the vacancy provision and 2) the undisputed facts show that the Property was vacant. Doc. 40 ("Defendant's Motion"); Doc. 51 ("Plaintiff's Motion").

*ii. Plaintiff's Motion for Summary Judgment on Vacancy*

Plaintiff argues that the undisputed facts show that Defendant waived its vacancy provision is thereby estopped from using the defense that the property was vacant at the time of the alleged loss. Doc. 51 at 22. In support of its argument, Plaintiff cites Royal Indem. Co. v. Hook, which held that "...provisions as to forfeiture and avoidance of breach of conditions being for [a company's] benefit, may be waived by it, and the company is estopped to set up forfeitures when, with such knowledge, it issues a policy and accepts a premium." 155 Va. 956, 965, 157

S.E. 414, 417 (1931). Plaintiff also argues that because Virginia law construes language in insurance policies in favor of liability of the insured, that Defendant's knowledge that the property was unoccupied at the time of issuing the coverage waived their right to assert the vacancy provision. Doc. 51 at 23-24. Plaintiff also alleges that Defendant took the fact that it was insuring a vacant property into account at the time of issuing the policy because it raised the insurance premium. Id. And, that by increasing the premium, Defendant impliedly waived the vacancy provision. Id.

In response, Defendant contends that Plaintiff's argument against the vacancy policy is deficient for two reasons. First, Defendant argues that Plaintiff incorrectly cites Virginia law; and second, Defendant argues that Plaintiff misstated the facts in regard to the e-mail sent to Angie Mills ("Ms. Mills"). Doc. 60 at 10-13. Defendants cite to an exhibit with the actual e-mail exchange between Plaintiff and Ms. Mills prior to insuring the property. Id. In the e-mail she states "Let me ask you this, though…if the insured is just now purchasing, then this hotel is not up and running? That's a big issue because it would almost be a vacant building (and you know we don't do those)." Def. Opp. Ex. 2. And, in response to her question, Plaintiff provided information that the property was expected to open on January 1 after Plaintiff spent forty-five days making minor repairs. Id.

Defendant cites <u>Ruffin v. United States Insurance Co.</u>, 208 Va. 463, 158 S.E.2d 672 (1968)) and argues that when an insurer knows that a property is vacant at the time of issuing the policy, but is unaware that the property will remain vacant and does not otherwise communicate to the insured that it is waiving the vacancy provision, the insurer is not estopped from relying on the vacancy provision. Id; <u>Ruffin</u>, 158 S.E.2d at 674.

The Court FINDS that Defendant is not estopped from arguing that its vacancy provision applies because the case law cited by Defendant is on point with its alleged factual circumstances in this case.

Ms. Mills was told that the building was unoccupied, but that the Insured would spend the next forty-five (45) days conducting renovations. As in Ruffin, where the court found that the vacancy provision was not waived when the insurer allegedly did not know that the property would remain vacant, Ms. Mills allegedly was under the impression that the property would be up and running within the relevant time period. Defendant also denies that it expressly or impliedly waived its vacancy provision. And, Ms. Mills' e-mail allegedly communicated that Defendant would not insure a vacant property and asked further questions to determine whether the property would somehow fit within in exception.

Plaintiff also argues that the vacancy provision was later waived when Defendant's agent, Ms. Mills, was notified in late December that the property would not be open by January 1, and Defendant decided not to cancel the policy on that basis prior to the loss. However, the Defendant also alleges that it had prepared for an individual to inspect the property in early January, but that the individual became sick and was unable to do so. Doc. 51 at 9; Doc. 60 at 6-10. It appears from this allegation that Defendant was in the process of determining whether the property was indeed vacant at that time, but was unable to do so prior to the loss.

*ii. Defendant's Motion for Summary Judgment on Vacancy*

Defendant's Motion for Summary Judgment alleges that the undisputed facts show that the property was vacant because the building was both unoccupied, and no construction or renovation was being conducted at the property in the sixty days prior to the January 26 Loss. Doc. 40 at 28-34. Plaintiff alleges that it performed several tasks that would qualify as

renovations in the sixty days prior to the January 26 Loss, including caulking and cleaning. Doc. 61 at 6. They also had health inspectors and contractors visit the property. Id. Defendant argues that there was no caulking or cleaning done at the hotel prior to the January 26 Loss. Doc. 40 at 29-31. Defendant submits police cam videos and photographs, which they allege do not show evidence that those activities were being performed. Doc. 45-1 ("Shaw Ex. 1"); Def. Exs. 11-13. Defendant also points to several inconsistencies in the testimony of Plaintiff's employee who allegedly performed the caulking and cleaning. Doc. 40 at 30-31.

The Policy's vacancy provision provides that "buildings under construction or renovation are not considered vacant." Pl's Ex. 4 at 28. However, the policy does not define the terms "construction" or "renovation." See Pl's Ex. 4.

Additionally, the determination of whether Plaintiff actually performed the alleged caulking and cleaning activities rests on the credibility of Plaintiff's witness. Credibility is an issue to be determined by the trier of fact. See Magill v. Gulf & Western Industries, Inc., 736 F.2d 976, 979 (4th Cir. 1984) ("Summary judgement...is inappropriate if an issue depends upon the credibility of witnesses, because such credibility can best be determined after the trier of fact observes the witness' demeanor"). Therefore, viewing the evidence presented in Defendant's Motion for Summary Judgment in the light most favorable to the Plaintiff, the Court FINDS that there are genuine issues of material fact in dispute as to whether Plaintiff performed the caulking and cleaning activities at the hotel and whether these activities amount to "renovations."

### D. Applicability of Misrepresentation Provision

*i. Summary of Arguments*

Defendant argues that it is entitled to Summary Judgment because Plaintiff violated Defendant's Policy provision regarding misrepresentation or fraud. Doc. 40 at 12.

Plaintiff argues that Defendant is barred from raising its misrepresentation defense because Defendant failed to allege fraud with particularity in its responses to Plaintiff's interrogatories, or in the alternative, that the undisputed facts show that Plaintiff did not make a material misrepresentation. See Doc. 40; Doc. 51.

*ii. Plaintiff's Motion for Partial Summary Judgment on Misrepresentation Defense*

At oral argument on Plaintiff's Motion to Compel, this Court FOUND that Defendant had failed to allege its fraud defense with sufficient particularity in its answers to Plaintiff's First Set of Interrogatories. Doc. 38. As a result, this Court ordered Defendant to provide Plaintiff with the exact statements, including page and line numbers, of any recorded testimony that Defendant claimed as the language of the misrepresentation. Id. at 9. Plaintiff now argues that Defendant has violated the Court's Order and that Defendant should be barred from raising its affirmative defense at trial. Doc. 51 at 30. When the disclosure was made on May 2, 2018, pursuant to the Court's order, Defendant identified 134 pages of false testimony, which amounted to over 1000 lines of false testimony. Id. Plaintiff contends that because the disclosure of so many lines of testimony was made after the close of Plaintiff's discovery, Plaintiff is entitled to one of the remedies outlined in Rule 37 of the Federal Rules of Civil Procedure. Doc. 51 at 29-30 (citing Mutual Federal Savings and Loan Association v. Richards & Associates, Inc., 872 F.2d. 88, (4th Cir. 1989) for the proposition that courts are permitted wide discretion to address failures to comply with discovery orders pursuant to Rule 37).

Rule 37 of the Federal Rules of Federal Procedure states that "If a party fails to provide information…the party is not allowed to use that information…unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37. The rule also provides the court with alternative sanctions, such as the payment of attorney's fees caused by the failure, informing the

jury of the failure, or utilizing one of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Id. One of the orders listed in Rule 37(b)(2)(A)(i)-(vi) includes striking a party's affirmative defense where it has not been alleged with sufficient particularity. Id.

Plaintiff contends that he would have had to do discovery "on the context of and prior statements concerning each of the subjects of each of these alleged misrepresentations." Doc. 51 at 30. Therefore, Defendant's failure to provide Plaintiff with the misrepresentations until after the close of discovery prejudiced Plaintiff because Plaintiff deposed Defendant's witnesses without being able to ask them about the specific misrepresentations that were later alleged. Id. at 32.

Defendant responds that the case that Plaintiff cites, Mutual Federal Savings and Loan Association, illustrates a much more egregious situation where a defendant disobeyed multiple court orders. Doc. 60 at 16.

The Court DENIES Plaintiff's Motion to Strike Defendant's affirmative defense. Although the statements were provided at the close of Plaintiff's discovery, they were disclosed over a month (now two months) prior to trial, which still allows Plaintiff to prepare its witnesses to address these alleged misrepresentations at trial.

Plaintiff also argues that the undisputed statements provided in Plaintiff's Examinations Under Oath fail to demonstrate, as a matter of law, that Plaintiff intended to make a material misrepresentation. Doc. 51 at 34-35. In support of this argument, Plaintiff alleges that Plaintiff fully cooperated in the investigation, which weighs heavily against Defendant's dispute that Plaintiff also sought to conceal facts regarding prior vandalism from Defendant. Id. at 35. Second, Plaintiff contends that there is no way that Defendant can show that it relied on any alleged misrepresentations because Plaintiff submitted its Sworn Proof of Loss after Defendant

had already independently examined the property and provided its own estimate. Because Defendant addresses these arguments in its Motion for Summary Judgment, the Court will address Defendant's position below.

*iii. Defendant's Motion for Summary Judgment on Misrepresentation Defense*

Defendant argues that it is entitled to Summary Judgment because the undisputed facts show, as a matter of law, that Plaintiff intentionally made materially false statements regarding its claim of loss. Doc. 40 at 12-22.

Defendant argues that Plaintiff is intentionally misrepresented its claim by submitting a Sworn Proof of Loss that claimed damage to nearly all of the rooms of the Hotel, when the evidence shows that nearly all rooms of the hotel could not possibly have been damaged as a result of the cut toilet line in room 510 on January 26, 2016. Id. at 19. In support of its argument that the inflation was "intentional," Defendant presents a report that was conducted by Plaintiff's architect and engineer, who found that only nine rooms were damaged from the cut toilet line. Id. Defendant also points to other allegedly intentional inconsistencies and argues that these inconsistencies amount to material misrepresentations.[2]

Plaintiff disputes that its architect and engineer will be allowed to offer testimony on the scope of the loss at trial because the architect and engineer were not disclosed as expert witnesses during discovery, and the testimony relating to the scope of loss would require expert testimony. Doc. 59 at 8. Additionally, Plaintiff contends that the Hotel owners innocently relied

---

[2] Defendant notes the following facts as misrepresentations: the employee stated that he never noticed bubbled paint, even though bubbled paint is visible on the hotel walls in one of the police cam videos; there were no puddles in the Hotel hallways before January 26, when a video shows a puddle in the hallway before January 26; there were no stains on the floor in the ballroom area before January 26, when a video shows stains on the floor before January 26; the damage to the front desk area occurred within a day of the cut toilet line when a video shows damage in that area before then; that the employee was not aware of cut or broken water lines in the kitchen before January 27, when the police report indicates that there was a leak in the kitchen before January 27; that the employee discovered damage caused by the cut toilet line before discovering water damage to the kitchen, when there is evidence that the kitchen damage occurred first. Doc. 60 at 21.

14

on an estimate that was conducted by their estimator, Atlantic Estimating, LLC, on June 6, 2016, in submitting their Sworn Proof of Loss, and that the report more accurately claims damage to only eighty (80) rooms as a result of the January 26 loss instead of nearly all of the rooms. Id. at 14. Plaintiff also avers that there was a vast difference in the Plaintiff's estimate and Defendant's estimate because Plaintiff's estimator included costs for cleaning due to mold accumulation that would have been much greater by June than in February. Id. at 15.

Under Virginia law a party alleging fraud must prove those allegations by clear and convincing evidence. Utica Mut. Ins. Co. v. Presgraves, 2002 WL 1162602 *3 (W.D. Va. May 28, 2002). A material misrepresentation as to the value of an insurance claim will void an insurance policy. Id. at *8. A misrepresentation is material if it "might have affected the attitude and action of the insurance company, or was calculated [to] discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate." Id (citing Fine v. Bellafonte Underwriters Ins., 725 F.2d 179, 184 (2d. Cir. 1984) (internal quotations omitted). The representation must be made with the intent to deceive or defraud. Id. An innocent misrepresentation does not trigger a "false swearing" provision. Chase v. CAN Ins. Co., 1990 WL 1100518 *2 (Feb. 28, 1990) (false statement on proof of loss listed items as "destroyed" but were later recovered). When an insured has submitted false information to an insurer, he can recover if he shows that his actions were not in fact fraudulent. Id.

Further, a knowing and intentional overvaluation in sworn proofs of loss voids a policy. Globe & Rutgers Fire Ins. Co. v. Stallard, 68 F.2d 237, 240 (4th Cir. 1934) (citing Lykos v. American Home Ins. Co., 609 F.2d 314 (7th Cir. 1979) (finding that an insured made fraudulent

15

misrepresentations where insured intentionally listed higher prices in its proof of loss when the actual amount spent on the items was a lot lower)).

Based on the varying testimony regarding the scope of loss, the Court FINDS that there are genuine issues of material fact regarding whether Plaintiff submitted its Sworn Statement of Loss with the intent to produce a false sworn statement. Additionally, the issue of whether Plaintiff's higher valuations stem from Plaintiff's intent to falsely represent the amount of loss is an issue to be determined by a jury. See Magill, 736 F.2d at 979 ("Summary judgment is seldom appropriate in cases which particular states of mind are decisive elements of [a] claim or defense). Plaintiff has provided several alternate explanations that, if believed by the jury, would result in a finding in Plaintiff's favor, including the issue of whether Plaintiff's language barrier or lack of memory due to the length of time between the incidents and the examinations under oath, explain why there were inconsistencies in Plaintiff's representations.

## IV. CONCLUSION

Because the Court FINDS that Defendant is not estopped from relying on its vacancy provision and that there are genuine issues of material fact as to whether Plaintiff's miscalculations rise to the level of material misrepresentations or whether Plaintiff's property was vacant, the Court DENIES Plaintiff's Motion for Partial Summary Judgment, Doc. 50, and Defendant's Motion for Summary Judgment, Doc. 39.

The Clerk is **REQUESTED** to send a copy of this Opinion & Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 25, 2018